### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### BRIDGEPORT DIVISION

In re:
                                              : CHAPTER 11
PETROLEUM & FRANCHISE CAPITAL, LLC and : Case Nos. 10-51465 (AHWS)
PETROLEUM & FRANCHISE FUNDING, LLC    :              10-51467 (AHWS)
                                              :
          Debtors                             : Jointly Administered
                                              : Under Case No. 10-51465(AHWS)


THIRD AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11
OF THE BANKRUPTCY CODE PROPOSED BY
PETROLEUM & FRANCHISE CAPITAL, LLC AND
PETROLEUM & FRANCHISE FUNDING, LLC


James Berman, Esq.
Craig I. Lifland, Esq.
ZEISLER & ZEISLER, P.C.
558 Clinton Avenue
Bridgeport, CT  06605
Tel. 203-368-4234
Fax 203-367-9678

COUNSEL FOR PETROLEUM & FRANCHISE CAPITAL, LLC and
PETROLEUM & FRANCHISE FUNDING, LLC

September 12, 2011

1

# TABLE OF CONTENTS

**ARTICLE I DEFINITIONS, CONSTRUCTION, AND INTERPRETATION.......................1**

**ARTICLE II UNCLASSIFIED CLAIMS .................................................................................10**

2.01.   Administrative Claims. ............................................................................10
2.02.   Priority Tax Claims.................................................................................12
2.03.   U.S. Trustee Fees. ...................................................................................12

**ARTICLE III SUMMARY OF CLASSIFICATION OF CLAIMS AND
INTERESTS .............................................................................................................12**

3.01.   Introduction.............................................................................................12
3.02.   Classes of Claims Against and Interests in the Debtors. .......................13

**ARTICLE IV IDENTIFICATION OF UNIMPAIRED AND IMPAIRED
CLAIMS AND INTERESTS ...................................................................................13**

4.01.   Unimpaired Claims and Interests............................................................13
4.02.   Impaired Claims......................................................................................13
4.03.   Controversy Concerning Impairment .....................................................14

**ARTICLE V TREATMENT OF CLAIMS AND INTERESTS ...........................................14**

5.01.   Class 1 - Non-Tax Priority Claims – Unimpaired ..................................14
5.02.   Class 2 - DZ Bank Secured Claim - Impaired .......................................14
5.03.   Class 3 - General Unsecured Claims – Unimpaired ...............................15
5.04.   Class 4 - Interests in the Debtors –- Unimpaired ...................................15

**ARTICLE VI MEANS FOR EXECUTION AND IMPLEMENTATION OF
THIS PLAN ..............................................................................................................15**

6.01.   Sources of Cash for Plan Distributions...................................................15
6.02.   Management After the Effective Date .....................................................16
6.03.   Directors of Reorganized Debtors ..........................................................16
6.04.   Corporate Action.....................................................................................16
6.05.   Amended and Restated RLSA and Transaction Documents ...................16
6.06.   Effectuating Documents; Further Transactions; Timing .........................16
        The Debtors and Reorganized Debtors are authorized to execute, deliver, file, or record such
        contracts, instruments, merger documents, releases, and other agreements or documents
        and to take such actions as may be necessary or appropriate to effectuate and further
        evidence the terms and conditions of the Plan.  All transactions that are required to occur
        on the Effective Date under the terms of the Plan shall be deemed to have occurred
        simultaneously, unless otherwise provided in the Plan. ..................................................16
6.07.   Servicing of Loan Portfolio Pursuant to the Amended and Restated RLSA ....................16

i

6.08.    Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors ........16

**ARTICLE VII** **TREATMENT OF EXECUTORY CONTRACTS** ........................................**17**

7.01.    General Treatment of Executory Contracts: Rejected ........................................17
7.02.    Cure Payments and Release of Liability ........................................17
7.03.    Bar to Rejection Damages Claims ........................................18
7.04.    Rejection Damages Claims ........................................18

**ARTICLE VIII** **CONDITIONS TO CONFIRMATION DATE AND
EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION** ........................................**18**

8.01.    Conditions Precedent to Confirmation Date ........................................18
8.02.    Conditions Precedent to the Effective Date ........................................18
8.03.    Consequences of Non-Occurrence of Effective Date ........................................19

**ARTICLE IX** **EFFECT OF PLAN CONFIRMATION AND EFFECTIVE
DATE** ........................................**19**

9.01.    Binding Effect ........................................19
9.02.    Vesting of Assets ........................................20
9.03.    Assertion of Causes of Action, Defenses and Counterclaims ........................................20
9.04.    Discharge Claims and Exculpation ........................................20
9.05.    Injunction ........................................21
9.06.    Releases by Debtors and Estates ........................................22
9.07.    Term of Bankruptcy Injunction or Stays ........................................22

**ARTICLE X** **OBJECTIONS TO CLAIMS AND INTERESTS;
DISTRIBUTIONS** ........................................**23**

10.01.    Objections to Claims and Interests ........................................23
10.02.    Objection Deadline ........................................23
10.03.    Settlement of Objections to Claims or Interests ........................................24
10.04.    Omitted ........................................24
10.05.    Setoffs by the Debtors; No Waiver ........................................24
10.06.    Procedures for Treating and Resolving Disputed and Contingent Claims ........................................24
10.07.    Distributions Under the Plan ........................................26
10.08.    Duty to Disgorge Overpayments ........................................27

**ARTICLE XI** **ACCEPTANCE OR REJECTION OF THE PLAN** ........................................**27**

11.01.    Impaired Classes Entitled to Vote ........................................27
11.02.    Acceptance by an Impaired Class ........................................27

**ARTICLE XII** **RETENTION OF JURISDICTION** ........................................**27**

12.01.    Jurisdiction ........................................27
12.02.    Examination of Claims ........................................28

ii

12.03. Determination of Disputes ...............................................................................28
12.04. Additional Purposes........................................................................................28
12.05. Failure of the Bankruptcy Court to Exercise Jurisdiction................................30

**ARTICLE XIII MISCELLANEOUS PROVISIONS.............................................30**

13.01. General Notices...............................................................................................30
13.02. Plan Supplement ............................................................................................31
13.03. Exemption From Transfer Taxes .....................................................................31
13.04. Asserting and Curing Default Under the Plan ................................................32
13.05. Compliance with Tax Requirements.................................................................32
13.06. Revocation or Withdrawal of the Plan.............................................................32
13.07. Modification of the Plan .................................................................................32
13.08. Computation of Time .......................................................................................32
13.09. Implementation ...............................................................................................33
13.10. Bankruptcy Restrictions...................................................................................33
13.11. Ratification .....................................................................................................33
13.12. Integration Clause ..........................................................................................34
13.13. Interpretation..................................................................................................34
13.14. Severability of Plan Provisions........................................................................34
13.15. Governing Law ................................................................................................35

**TABLE OF EXHIBITS**

**EXHIBIT A – Summary of Certain Material Terms of the Amended and Restated RLSA and Lender Party Plan Treatment**

iii

CH1 5924301v.1
CH1 6207524v.2

## INTRODUCTION

Petroleum & Franchise Capital, LLC ("PFC") and Petroleum & Franchise Funding, LLC ("PFF") (each a "Debtor" and collectively, the **"Debtors"**) propose this Plan pursuant to Bankruptcy Code section 1121(a). Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of each of the Debtors' respective history, business, properties, results of operations, resolutions of material disputes, projections for future operations and liquidation, risk factors, a summary and analysis of the Plan, and certain related matters.

THE DEBTORS URGE ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY. NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND ANY DOCUMENTS, SCHEDULES OR EXHIBITS ATTACHED THERETO OR REFERENCED THEREIN HAVE BEEN AUTHORIZED BY THE DEBTORS OR THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

The Distributions to be made pursuant to this Plan to Holders of Allowed Claims and Allowed Interests, in each of the Classes of Claims against and Interests in the Debtors are set forth in Article V of this Plan.

## SUMMARY OF PLAN[1]

This Plan provides for (a) the continued operations of reorganized PFF and PFC, (b) entry into the Amended and Restated RLSA and Amended and Restated Transaction Documents, (c) payment in full of all Allowed General Unsecured Claims and (d) retention of Allowed Interests.

## ARTICLE I
## DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

The capitalized terms used herein shall have the respective meanings set forth below. A capitalized term used herein that is not defined in this Article or otherwise defined in the Plan shall have the meaning ascribed to that term, if any, in the Bankruptcy Code. To the extent that there is an inconsistency between a definition in this Plan and a definition in the Bankruptcy Code, the definition set forth in this Plan shall control. The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan, provided, that in the event of any conflict between the Plan and the Disclosure Statement, the Plan shall govern over the Disclosure Statement. In the event a conflict between the Plan and any document implementing the Plan arises, including, but not limited to, the Amended and Restated RLSA and the Amended and Restated Transaction Documents, the document implementing the Plan shall govern unless the Plan provides otherwise. In the event a conflict between the Plan and the Confirmation Order arises, the Confirmation Order shall govern. Whenever the context requires,

---

[1] This Summary is intended solely to provide an overview of the Plan. The Summary shall not be binding on any of the Debtors, and in the event of any conflict between the Summary and any other provision of the Plan, such other provision shall be controlling.

words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa.  All exhibits and schedules to the Plan are incorporated herein.  **PLEASE NOTE that all Exhibits to the Plan and the Plan Supplement have been, or will be, filed electronically with the Bankruptcy Court.  Copies of those Exhibits and the Plan Supplement may be viewed and/or downloaded from the Bankruptcy Court's PACER website.**

**Further, the Debtors will provide copies of any or all of the Exhibits to the Plan and the Plan Supplement upon written request submitted to:**

James Berman (jberman@zeislaw.com) or Craig I. Lifland (clifland@zeislaw.com)
Zeisler & Zeisler, P.C.
558 Clinton Avenue
Bridgeport, CT 06605

**1.01.** ***"Administrative Claim"*** means a Claim against a Debtor (including a Claim against a Debtor by the other Debtor) for payment or reimbursement of an administrative expense of a kind within the scope of Bankruptcy Code section 503(b) and entitled to priority under Bankruptcy Code section 507(a)(2), including, without limitation, (a) actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the businesses of the Debtors, including wages, salaries, or commissions for services rendered, (b) Fee Claims and all other claims for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, (c) all fees and charges assessed against the Estate under the Bankruptcy Code or under section 1930 of chapter 123 of title 28 of the United States Code, and (d) all other claims entitled to administrative priority claim status pursuant to a Final Order.

**1.02.** ***"Allowance Date"*** means the date on which a Claim becomes an Allowed Claim or an Interest becomes an Allowed Interest.

**1.03.** ***"Allowed,"*** with respect to a Claim or Interest in the Bankruptcy Cases, other than an Administrative Claim, or any portion thereof, means such a Claim (a) that has been allowed by a Final Order, (b) that either (y) was listed in the Schedules as a liquidated, non-contingent, and undisputed Claim in an amount greater than zero or (z) is the subject of a timely filed Proof of Claim as to which either (i) no objection to its allowance has been filed (either by way of objection or amendment of the Schedules) on or before the Objection Deadline or (ii) any objection to its allowance has been settled, waived through payment, withdrawn or overruled by a Final Order, or (c) that is expressly allowed in a liquidated amount in the Plan; with respect to an Administrative Claim, means an Administrative Claim for which a timely written request for payment has been made in accordance with the Plan (if such written request is required) and as to which (y) no timely objection to its allowance has been filed or (z) any objection to its allowance has been settled, waived through payment, withdrawn or overruled by a Final Order; and with respect to an Interest, means any Interest that appears, as of the Petition Date, in the Debtors' books and records except as provided in the Plan or otherwise determined by a Final Order.

**1.04.** ***"Amended and Restated LLC Agreement"*** means the Amended and Restated Limited Liability Agreement of PFF, to be executed on or prior to the Effective Date by and

between PFC, as initial member and other members of PFF, a substantially final form of which shall be filed with the Plan Supplement.

      **1.05.** ***"Amended and Restated RLSA"*** means the Amended and Restated Receivables Loan and Security Agreement, to be executed by and among Reorganized PFF, as borrower, Reorganized PFC, as servicer, Autobahn, as lender, DZ Bank, as agent, and U.S. Bank, as custodian, agent's bank and backup servicer on the Effective Date, a substantially final form of which shall be filed with the Plan Supplement.

      **1.06.** ***"Amended and Restated Transaction Documents"*** means the documents to be executed in connection with the Amended and Restated RLSA, including but not limited to the Amended and Restated LLC Agreement.

      **1.07.** ***"Asset(s)"*** means property owned by either Estate.

      **1.08.** ***"Autobahn"*** means Autobahn Funding Company LLC in its capacity as lender pursuant to the RLSA and Amended and Restated RLSA.

      **1.09.** ***"Avoidance Action"*** means, with respect to each Debtor, any Cause of Action arising under chapter 5 of the Bankruptcy Code including, but not limited to, Bankruptcy Code sections 502, 510, 541, 542, 544, 545, 547, 548, 549, 550, 551, or 553, or under any similar applicable law, including, without limitation, fraudulent transfer laws, whether or not any such Cause of Action has been asserted or commenced as of the Effective Date.

      **1.10.** ***"Ballot"*** means the form of ballot distributed with the Disclosure Statement and the Plan to each Holder of an impaired Claim entitled to vote to accept or reject the Plan and which each such Holder may use to cast a vote to accept or reject the Plan.

      **1.11.** ***"Balloting Agent"*** means Zeisler & Zeisler, P.C.

      **1.12.** ***"Balloting Deadline"*** means the deadline set by the Bankruptcy Court for the receipt by the Balloting Agent of Ballots for accepting or rejecting the Plan.

      **1.13.** ***"Bankruptcy Case(s)"*** means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court and (b) when used with reference to both Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

      **1.14.** ***"Bankruptcy Code"*** means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Bankruptcy Cases.

      **1.15.** ***"Bankruptcy Court"*** means the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division, or any other court or adjunct thereof having jurisdiction over the Bankruptcy Cases.

      **1.16.** ***"Bankruptcy Rules"*** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Bankruptcy Cases or proceedings therein, and the Local

Rules of the Bankruptcy Court, all as now in effect or hereafter amended.

**1.17.** *"Bar Date"* means the deadline for filing in the Bankruptcy Cases Proofs of Claim against or Interest in the Debtors arising before the Petition Date, which date was October 25, 2010, except for Claims whose filing deadline is otherwise subject to the Rejection Damages Claim Bar Date or such bar date as may be established with respect to Administrative Claims and Fee Claims in the notice of the Effective Date.

**1.18.** *"Business Day"* means any day other than a Saturday, a Sunday, a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a), or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

**1.19.** *"Case Interest Rate"* means the federal judgment rate provided in 28 U.S.C. § 1961 in effect on the Petition Date, which is .29% compounded annually on each anniversary of the Petition Date.

**1.20.** *"Cash"* means legal tender of the United States of America and equivalents thereof, which may be conveyed by check or wire transfer.

**1.21.** *"Causes of Action"* means any and all claims, actions, arbitrations, proceedings, causes of action, rights, suits, complaints, notices of non-compliance or violation, enforcement actions, investigations, accounts, controversies, agreements, promises, rights of action, rights to legal or equitable remedies, rights to payment, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that either Debtor and/or Estate may hold against any Person, or which could be asserted by a Debtor on behalf of any Creditor or Creditor representative under the Bankruptcy Code as a Debtors in possession (under Bankruptcy Code sections 1107(a) and 1108) or by any representative of a Debtor or an Estate, including but not limited to all Avoidance Actions and actions under Bankruptcy Code section 510 to subordinate Claims, and all proceeds of and recoveries of same.

**1.22.** *"Claim"* shall have the meaning provided in Bankruptcy Code section 101(5).

**1.23.** *"Class"* means a category of substantially similar Claims or Interests that are designated in a single category of Claims or Interests for purposes of the Bankruptcy Cases in accordance with section 1122 of the Bankruptcy Code, as described in Article III of this Plan.

**1.24.** *"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

**1.25.** *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128 to consider confirmation of this Plan, and as may be adjourned or continued from time to time.

**1.26.** *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan under Bankruptcy Code section 1129.

**1.27.** *"Creditor"* means any Person that is the Holder of a Claim against one or more of the Debtors.

**1.28.** *"Cure Amount"* means any amount required to be paid as a condition for the assumption of an Executory Contract under Bankruptcy Code section 365(b).

**1.29.** *"Debtor(s)"* means individually or collectively, as applicable, PFC and/or PFF.

**1.30.** *"Disallowed Claim"* means any Claim including any portion thereof, that (a) has been disallowed by a Final Order or any provision of the Plan, (b) is listed in the Schedules in an amount of zero or as contingent, unliquidated or disputed and as to which no Proof of Claim has been filed, or (c) is not listed in the Schedules and as to which (i) no Proof of Claim has been filed, or (ii) no request for the allowance of an Administrative Claim (including a Fee Claim) has been filed by the deadline in Section 2.01 of the Plan or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or a Final Order or under applicable non-bankruptcy law.

**1.31.** *"Disclosure Statement"* means the disclosure statement (including all exhibits and schedules thereto) relating to the Plan, as approved by the Bankruptcy Court and distributed contemporaneously with this Plan in accordance with Bankruptcy Code section 1125 and Bankruptcy Rule 3017, as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

**1.32.** *"Disputed"* means, with respect to a Claim (including any Administrative Claim) or Interest, such Claim or Interest, or any portion thereof, (a) to the extent neither Allowed pursuant to the Plan or a Final Order nor deemed Allowed under Bankruptcy Section 502, 503 or 1111, (b) that is listed in the Schedules as disputed, contingent, or unliquidated and which has not been resolved by written  agreement of the parties or a Final Order; or (c) for which a Proof of Claim or Interest has been timely filed or deemed timely filed with the Bankruptcy Court and as to which any party in interest has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or any order of the Bankruptcy Court, or which is otherwise Disputed by a Debtors in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or resolved or determined by a Final Order; or (d) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim or Interest has been determined by Final Order in such other forum and Allowed by Final Order.  Prior to the expiration of the time within which to object to such Claim or Interest set forth herein or otherwise established by order of the Bankruptcy Court, a Claim or Interest shall be considered Disputed to the extent that (i) the amount of the Claim or Interest specified in a Proof of Claim or Interest exceeds the amount listed in the Schedules as disputed, contingent or unliquidated and/or (ii) to the extent that any such Claim or Interest is classified differently in the Proof of Claim or Interest that as set forth in the Schedules.  To the extent an objection related to the allowance of only a part of a Claim or Interest has been timely filed, such Claim or Interest shall be a Disputed Claim only to the extent of the objection.

**1.33.** *"Disputed Amount"* means (a) if a liquidated amount is set forth in a Proof of Claim or Interest relating to a Disputed Claim or Interest, (i) the liquidated amount set forth in

the Proof of Claim or Interest relating to the Disputed Claim or Interest, (ii) an amount agreed to by the Debtors and the Holder of such Disputed Claim or Interest, or (iii) if a request for estimation is filed by any party, the amount at which such Claim or Interest is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim or Interest relating to a Disputed Claim or Interest, (i) an amount agreed to by the Debtors and the Holder of such Disputed Claim or Interest, (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim or Interest; or (c) if the Claim or Interest was not listed on the Schedules or was listed on the Schedules as unliquidated, contingent or unliquidated and no Proof of Claim or Interest was filed, or deemed to have been filed, by the applicable Bar Date and the Claim or Interest has not been resolved by written agreement of the Debtors and the Holder of such Claim or Interest or an order of the Bankruptcy Court, zero.

1.34.    *"Distribution"* means the property to be distributed under the Plan to the Holders of Allowed Claims.

1.35.    *"Distribution Date"* means a date upon which a Distribution is made in accordance with the Plan to Holders of Allowed Claims entitled to receive Distributions under the Plan.

1.36.    *"Distribution Reserve Account(s)"* means a segregated account or accounts that may be established and maintained by the Debtors and/or the Reorganized Debtors from Assets for the benefit of the Holders of Allowed Claims, subject to the terms and conditions of this Plan and the Amended and Restated RLSA.

1.37.    *"DZ or DZ Bank"* means DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt am Main, in its capacity as agent pursuant to the RLSA and Amended and Restated RLSA, and swap counterparty under the RLSA Swap.

1.38.    *"DZ Bank Secured Claim"* means, collectively, all Claims, rights and obligations against the Debtors that are held by DZ Bank and Autobahn pursuant to the terms and conditions of the RLSA and related transaction documents, including all interest, fees and expenses pursuant to section 506 of the Bankruptcy Code, which DZ Bank Secured Claim shall be Allowed pursuant to the terms of this Plan and the Confirmation Order and shall not be subject to avoidance, subordination, offset or recharacterization.

1.39.    *"Effective Date"* means the first Business Day this Plan becomes effective and is implemented in accordance with the Confirmation Order, provided such date shall not be greater than 30 days after the Confirmation Date, unless extended pursuant to Section 8.03 herein.

1.40.    *"Entity"* shall have the meaning provided in Bankruptcy Code section 101(15).

1.41.    *"Estate(s)"* means, individually or collectively, the estate or estates of either Debtor created in the Bankruptcy Cases under Section 541 of the Bankruptcy Code.

1.42.    *"Executory Contract"* means any prepetition executory contract or unexpired lease within the meaning of Bankruptcy Code section 365 between a Debtors and any other Person(s).

**1.43.** *"Fee Application"* means an application for the allowance and/or payment of a Fee Claim.

**1.44.** *"Fee Claim"* means a Claim against a Debtor by a Professional or any other party pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b) or 1103 or otherwise for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and prior to and including the Effective Date.

**1.45.** *"Final Decree"* means the final decree entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022, which shall, *inter alia*, close the Bankruptcy Case(s).

**1.46.** *"Final Order"* means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment.

**1.47.** *"General Unsecured Claim"* means a Claim other than an Administrative Claim, a Non-Tax Priority Claim, a Priority Tax Claim, and the DZ Bank Secured Claim.

**1.48.** *"Holder"* means the beneficial owner of a Claim or an Interest.

**1.49.** *"Initial Distribution Date"* means the first Distribution Date following the Effective Date, which date shall be no later than thirty (30) days after the Effective Date.

**1.50.** *"Interest"* means the legal, equitable, contractual, and/or other rights of any Person with respect to any capital stock or other ownership interest in any Debtors, whether or not transferable, and any option, warrant or right to purchase, sell, or subscribe for an ownership interest or other equity security in either Debtor.

**1.51.** *"Lender Parties"* means, collectively, Autobahn and DZ Bank as lender and agent, respectively, under the RLSA and Amended and Restated RLSA.

**1.52.** *"Lien"* has the meaning provided in Bankruptcy Code section 101(37) and shall include a "statutory lien" as defined in Bankruptcy Code section 101(53).

**1.53.** *"Lord Securities"* means Lord Securities Corporation.

**1.54.** *"Lyon Financial"* means Lyon Financial Services, Inc. (d/b/a U.S. Bank Portfolio Services) as backup servicer under the RLSA.

**1.55.** *"Non-Tax Priority Claim"* means any Claim that, if Allowed, would be entitled to priority in payment under Bankruptcy Code section 507(a) other than a Priority Tax Claim or an Administrative Claim.

**1.56.** *"Objection Deadline"* means the last day for filing objections (including, without limitation, requests for subordination) to Claims or Interests, other than Administrative Claims or Fee Claims, which day shall be the latest of (a) 90 days after the Effective Date, (b) 90 days after the filing date of any Proof of Claim or Interest that is timely filed after the Confirmation Date, or (c) such other day as the Bankruptcy Court may order.  The filing of a motion to extend the Objection Deadline shall automatically extend the Objection Deadline until an order ruling on such motion becomes a Final Order.  If such motion to extend the Objection Deadline is denied, the Objection Deadline shall be the later of the current Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's order denying such motion becomes a Final Order.

**1.57.** *"Person"* means any Entity, natural person, corporation, limited liability company, limited partnership, general partnership, joint venture, trust, land trust, business trust, unincorporated organization, or other organization (irrespective of whether it is a legal entity), and any "governmental unit" as that term is defined in Bankruptcy Code section 101(27).

**1.58.** *"Petition Date"* means June 23, 2010, the date on which the Debtors commenced the Bankruptcy Cases in the Bankruptcy Court.

**1.59.** *"PFC"* means Petroleum & Franchise Capital, LLC, a Delaware limited liability company.

**1.60.** *"PFF"* means and Petroleum & Franchise Funding, LLC, a Delaware limited liability company.

**1.61.** *"Plan"* means this Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, all exhibits or agreements annexed to such plan, referenced in such plan, or included in the Plan Supplement, as the same may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**1.62.** *"Plan Supplement"* means the exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including the form of Amended and Restated RLSA and form of certain other Amended and Restated Transaction Documents, which shall be filed by the Debtors no later than five (5) days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court without further notice to parties in interest, and as may be amended thereafter.  All documents comprising the Plan Supplement shall be in form and substance acceptable to the Debtors and the Lender Parties.

**1.63.** *"Priority Tax Claim"* means any Claim that, if Allowed, would be entitled to priority under Bankruptcy Code section 507(a)(8).

**1.64.** *"Professional"* means (a) any Person employed in one or more of the Bankruptcy Cases pursuant to Bankruptcy Code sections 327, 328 or 1103 or otherwise and (b) any Person seeking compensation or reimbursement of costs and expenses in connection with the Bankruptcy Cases pursuant to Bankruptcy Code section 503(b)(4) or 1129(a)(4).

**1.65.** ***"Proof of Claim" and "Proof of Interest"*** means the proof of Claim or proof of Interest, as applicable, that must be filed by a Holder of a Claim against or Interest in either Debtor on or before the applicable Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or a Final Order or under applicable non-bankruptcy law.

**1.66.** ***"Rejection Damages Claim"*** means a Claim by a party to an Executory Contract that has not been assumed by the Debtors pursuant to the Plan or a prior Final Order entered in the Bankruptcy Cases for damages arising from the rejection by a Debtors of such Executory Contract under Bankruptcy Code section 365.

**1.67.** ***"Rejection Damages Claim Bar Date"*** means the deadline by which any Person must file a Rejection Damages Claim, which deadline shall be the later of (a) thirty (30) days after service of a notice of the Effective Date, (b) thirty (30) days after entry of a Final Order of the Bankruptcy Court rejecting such Executory Contract, or (c) such other date as is prescribed by the Bankruptcy Court.

**1.68.** ***"Releasees"*** means the Debtors, Lender Parties, U.S. Bank, Lyon Financial and Lord Securities, and with respect to each of them, their respective directors and officers, agents, employees, members, stakeholders, subsidiaries, affiliates, attorneys, accountants, financial advisors, representatives or other professionals solely in their capacity as such; provided, however, that Releasees shall not include former directors and officers of the Debtors that were not employed by the Debtors as of the Petition Date.

**1.69.** ***"Reorganized"*** means, with respect to either Debtor, such Debtor or any successors thereto by merger, consolidation, conversion or otherwise, on or after the Effective Date.

**1.70.** ***"Reorganized Debtor(s)"*** means, individually or collectively, Reorganized PFF and/or Reorganized PFC.

**1.71.** ***"RLSA"*** means that certain Receivables Loan and Security Agreement, dated as of August 30, 2007 by and among PFF, as borrower, PFC, as servicer, Autobahn, as lender, DZ Bank, as agent, Lyon Financial, as backup servicer, and U.S. Bank, as custodian and agent's bank (as amended by that certain Waiver and Amendment No. 1, by and among PFF, PFC, the Lender Parties, U.S. Bank and Lyon Financial, dated as of January 15, 2010 and that certain Amendment No. 2 to Receivables Loan and Security Agreement, by and among PFF, PFC and the Lender Parties, dated as of March 15, 2010).

**1.72.** ***"RLSA Swap"*** means, collectively, that certain ISDA Master Agreement and Annexes thereto dated as of August 30, 2007, between DZ Bank and PFF, together with the Confirmation Schedule to ISDA Master Agreement dated May 13, 2011, entered into by DZ Bank and PFF, and all other Confirmations entered into under such ISDA Master Agreement from time to time.

**1.73.** ***"Schedule of Executory Contracts"*** means a schedule identifying Executory Contracts, if any, that shall be rejected by the Debtors pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code under the Plan and a Schedule of assumed contracts which shall list proposed cure amounts related thereto to such assumed Executory Contracts, if any, and both

schedules shall be included in the Plan Supplement.

1.74.  **"Schedules"** means, with respect to each Debtor, the schedules of assets and liabilities, the list of Holders of Interests, and the statement of financial affairs filed by such Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, as such items have been or may be modified, supplemented or amended.

1.75.  **"Secured Claim"** means a Claim secured by a Lien that is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, on or against property in which an Estate has an interest, or a Claim that is subject to setoff under Bankruptcy Code section 553, but only to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to Bankruptcy Code section 506(a) or, in the case of setoff, pursuant to Bankruptcy Code section 553, or in either case as agreed upon in writing by the relevant Debtor and the Holder of such Claim.  Secured Claims shall include Claims secured by Liens junior in priority to other Liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property after giving effect to all Liens that are senior in priority.

1.76.  **"Secured Tax Claim"** means a Claim by a governmental unit for the payment of a tax assessed against property of an Estate and that is secured as of the Effective Date by a Lien against such property, which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the property securing such Claim.

1.77.  **"Unclaimed Property"** means any Distribution under the Plan that, for a period of one year after the applicable Distribution Date (unless otherwise extended by an order of the Bankruptcy Court or an agreement with the relevant Debtors), is either (a) attributable to the Holder of an Allowed Claim that has failed to prepare, execute and return an Internal Revenue Service Form W-9, (b) returned as undeliverable, or (c) otherwise unclaimed.

1.78.  **"U.S. Bank"** means U.S. Bank National Association as custodian (in such capacity, the "Custodian") and agent's bank (the "Agent's Bank") under the RLSA and Amended and Restated RLSA and as backup servicer (the "Backup Servicer") under the Amended and Restated RLSA.

## <u>ARTICLE II</u>
## UNCLASSIFIED CLAIMS

2.01.  **Administrative Claims.**

    (a)    **Time for Filing Administrative Claims.**  The Holder of any Administrative Claim that is incurred, accrued or in existence prior to the Effective Date (including prior to the Petition Date), other than (i) a Fee Claim, (ii) an Allowed Administrative Claim, or (iii) a liability in the ordinary course of business must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before thirty (30) days after the Effective Date.  Such request must

include at a minimum (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim. Failure to timely and properly file and serve the request required under this Section shall result in the Administrative Claim being forever barred and discharged. Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party and the applicable Reorganized Debtor within thirty (30) days after the filing of the applicable request for payment of an Administrative Claim.

(b)     **Time for Filing Fee Claims.**  Any Person who holds or asserts an Administrative Claim that is a Fee Claim for compensation for services rendered and reimbursement of expenses incurred through the Effective Date shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application within thirty (30) days after the Effective Date. Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being forever barred and discharged. No Fee Claim will be deemed Allowed until an order allowing the Fee Claim becomes a Final Order. Objections to Fee Applications must be filed and served pursuant to the Bankruptcy Rules on the Debtors and the Person to whose application the objections are filed within thirty (30) days after the filing of the applicable Fee Application. No hearing may be held until the objection period has expired.

(c)     **Allowance of Administrative Claims.**  An Administrative Claim with respect to which a request for payment is required and has been properly filed pursuant to Section 2.01(a) of the Plan shall become an Allowed Administrative Claim if no timely objection is filed. If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order. An Administrative Claim that is a Fee Claim, and with respect to which a Fee Application has been properly filed and served pursuant to Section 2.01(b) of the Plan, shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.

(d)     **Payment of Allowed Administrative Claims.**  Except to the extent that a Holder of an Allowed Administrative Claim has been paid prior to the Effective Date, or agrees to a different treatment, each Holder of an Allowed Administrative Claim (other than Allowed Administrative Claims incurred in the ordinary course of business, which are paid pursuant to Section 2.01(e) below) shall receive, in full satisfaction, release and discharge of and exchange for such Administrative Claim, and after the application of any retainer or deposit held by such Holder, Cash from the Debtors equal to the Allowed amount of such Administrative Claim within ten (10) Business Days after the Allowance Date with respect to such Allowed Administrative Claim, provided, however, that in the event the Debtors have insufficient Cash to pay all Allowed Fee Claims in full as set forth above, then the Debtors and all Holders of Allowed Fee Claims may agree to alternative treatment for the payment of all Allowed Fee Claims.

(e)     **Administrative Claims Incurred in the Ordinary Course of Business.**  Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtors during the Bankruptcy Cases (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes, or alleged Administrative Claims arising in tort) shall not be required to file any request for payment of such Claims. Administrative Claims incurred in the Ordinary Course of Business of the Debtors will be paid

by the Debtors pursuant to the terms and conditions of the transaction giving rise to such Administrative Claim, without any further action by the Holders of such Administrative Claim. The Debtors reserve and the Debtors shall have the right to object before the Objection Deadline to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such claim until such time as any objection is resolved pursuant to a settlement or a Final Order.

### 2.02.    Priority Tax Claims.

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Initial Distribution Date, each Holder of an Allowed Priority Tax Claim, in full satisfaction, release, settlement, and discharge of and exchange for such Claim, shall receive from the Debtors, solely from the Assets of the Debtor against which such Priority Tax Claim is Allowed, (a) deferred Cash payments over a period not exceeding five (5) years after the Petition Date in an aggregate principal amount equal to the Allowed amount of such Priority Tax Claim, plus interest, from the Petition Date through the date such Claim is paid in full, on the unpaid portion thereof at the rate of interest determined under applicable non-bankruptcy law as of the calendar month in which the Confirmation Date occurs, in equal annual installments with the first payment to be due on the later of (i) the Initial Distribution Date or (ii) five (5) Business Days after the date when a Priority Tax Claim becomes an Allowed Priority Tax Claim, and subsequent payments to be due on each anniversary of the Initial Distribution Date, or (b) such other less favorable treatment to which such Holder the Debtors or the relevant Reorganized Debtor agree in writing. Notwithstanding the foregoing, (a) any Claim or demand for payment of a penalty (other than a penalty of the type specified in Bankruptcy Code section 507(a)(8)(G)) shall be Disallowed pursuant to the Plan and the Holder thereof shall not assess or attempt to collect such penalty from any Debtor or Reorganized Debtor, or from any of their Assets, and (b) the Debtors shall have the right to pay any Allowed Priority Tax Claim, or any unpaid balance of such Claim, in full, at any time after the Effective Date, without premium or penalty.

### 2.03.    U.S. Trustee Fees.

The Debtors and Reorganized Debtors shall timely pay to the United States Trustee all quarterly fees incurred in the Bankruptcy Cases pursuant to 28 U.S.C. § 1930(a)(6) until entry of a Final Decree in each Bankruptcy Case.  The Reorganized Debtors shall serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) after the Effective Date that either  Bankruptcy Case remains open.

## <u>ARTICLE III</u>
## SUMMARY OF CLASSIFICATION OF CLAIMS AND INTERESTS

### 3.01.    Introduction.

All Claims (other than the unclassified Claims described in Article II above) and Interests have been classified as set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

This Plan is a joint plan that does not substantively consolidate the Estates of PFC and PFF, however, the treatment of Claims against each Estate in each Class is identical, unless otherwise indicated, so they are not separately classified. Unless otherwise provided by the Plan or the Confirmation Order, Allowed Claims held against any Debtor shall be satisfied solely from the cash and other Assets of such Debtor and its Estate. Nothing in the Plan or in the Disclosure Statement shall constitute, or be deemed to constitute, an admission that either Debtor is subject to or liable for any Claims against the other Debtor.

Except for the unclassified Claims discussed in Article II above, Section 3.02 of the Plan sets forth a designation of Classes of all Claims and Interests in accordance with Bankruptcy Code section 1122(a). A Claim or Interest is classified in a particular Class only to the extent any portion of the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent any portion of the Claim or Interest qualifies within the description of that different Class. If a Claim or Interest is acquired or transferred, the Claim or Interest shall be placed in the Class in which it would have been placed if it were owned by the original Holder of such Claim or Interest. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, satisfied or released before the Effective Date.

**3.02.  Classes of Claims Against and Interests in the Debtors.**

    (a)    Class 1:  Non-Tax Priority Claims

    (b)    Class 2:  DZ Bank Secured Claim

    (c)    Class 3:  General Unsecured Claims

    (d)    Class 4:  Interests in the Debtors

## ARTICLE IV
## IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS AND INTERESTS

**4.01.  Unimpaired Claims and Interests**

Claims against the Debtors in Classes 1 and 3, and Interests in the Debtors in Class 4 are not impaired under the Plan, and the Holders of those Claims and Interests are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are thus not entitled to vote on the Plan.

**4.02.  Impaired Claims**

Claims against the Debtors in Class 2 are impaired under the Plan and the Holders of those Claims are entitled to vote to accept or reject the Plan.

#### 4.03.    Controversy Concerning Impairment

In the event of a controversy as to whether any Claim or Interest or any Class of Claims or Interests is impaired under the Plan, the Bankruptcy Court will determine the controversy, after notice and a hearing.

### ARTICLE V
### TREATMENT OF CLAIMS AND INTERESTS

#### 5.01.    Class 1 - Non-Tax Priority Claims – Unimpaired

(a) <u>Estimated Allowed Amount</u>: $**0**

(b) <u>Treatment</u>.  On or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to an Non-Tax Priority Claim, the Holder of such Allowed Non-Tax Priority Claim shall receive from the Debtors in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Non-Tax Priority Claim, (y) Cash in an amount equal to the Allowed amount of its Non-Tax Priority Claim, or (z) such other, less favorable treatment to which such Holder and the Debtors or the relevant Reorganized Debtor agree in writing.  To the extent an Allowed Non-Tax Priority Claim entitled to priority treatment under 11 U.S.C. §§ 507(a)(4) or (5) exceeds the statutory cap applicable to such Claim, such excess shall be treated as a Class 3 General Unsecured Claim against the relevant Debtor.

(c) <u>Voting</u>.  Non-Tax Priority Claims in Class 3 are Unimpaired.  Each Holder of an Allowed Non-Tax Priority Claim shall be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, accordingly, shall not be entitled to vote to accept or reject the Plan.

#### 5.02.    Class 2 - DZ Bank Secured Claim - Impaired

(a)    <u>Allowance of DZ Bank Secured Claim.</u>  The DZ Secured Claim shall be Allowed in the principal amount of $53,995,665.00, plus certain interest amounts, fees and expenses.[2]

(b)    <u>Treatment.</u>  In full satisfaction, settlement, release and discharge of the DZ Bank Secured Claim, on the Effective Date, (a) the Lender Parties shall receive the principal amount of $53,995,665.00, and certain interest, fees and expenses, as set forth in the Amended and Restated RLSA and Amended and Restated Transaction Documents, including the interest, fees and expenses in Cash, as summarized in Exhibit A attached hereto; and (b) the Lender Parties shall retain their Liens under the RLSA pursuant to the terms and conditions of the Amended and Restated RLSA and Amended and Restated Transaction Documents.  <u>A summary of certain material terms of the Amended and Restated RLSA and the Lender Party Plan treatment is set forth in Exhibit A attached hereto, which summary is subject in its entirety to the</u>

---

[2] The final Allowed amount of the DZ Bank Secured Claim shall be set forth in the Amended and Restated RLSA and/or the Amended and Restated Transaction Documents.

terms and conditions of the Amended and Restated RLSA and Amended and Restated Transaction Documents.[3]

(c)     Voting.  The DZ Bank Secured Claim in Class 2 is impaired.  The Lender Parties, as the Holders of the DZ Bank Secured Claim, shall be entitled to vote to accept or reject the Plan.

### 5.03.   Class 3 - General Unsecured Claims – Unimpaired

(a)     Allowed General Unsecured Claims for PFC and PFF.  Each Allowed General Unsecured Claim in Class 3 shall include interest thereon, at the Case Interest Rate, from the Petition Date through the date such Allowed General Unsecured Claim is paid in full.

(b)     Treatment.  In full satisfaction, settlement, release and discharge of its Claim, on or as soon as practicable after the Initial Distribution Date, or such subsequent Distribution Date after ultimate allowance of its Claim, each Holder of an Allowed General Unsecured Claim in Class 3 shall receive from the applicable Debtor and/or Reorganized Debtor Cash payments (i) necessary to leave unaltered the legal, equitable, and contractual rights to which the Holder of an Allowed Unsecured Claimant is entitled, or (ii) necessary to (a) cure any default that occurred before or after the commencement of the Bankruptcy Cases, and (b) reinstate the maturity of such Allowed Unsecured Claim.

(c)     Voting.  General Unsecured Claims in Class 3 are Unimpaired.  Each Holder of an Allowed General Unsecured Claim shall be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, accordingly, shall not be entitled to vote to accept or reject the Plan.

### 5.04.   Class 4 - Interests in the Debtors –- Unimpaired

(a)     Treatment  The Holders of all Allowed Interests in the Debtors shall retain their Interests in the applicable Reorganized Debtors.

(b)     Voting.  Interests in Class 4 are Unimpaired.  Each Holder of an Allowed Interest shall be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, accordingly, shall not be entitled to vote to accept or reject the Plan.

## ARTICLE VI
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN

### 6.01.   Sources of Cash for Plan Distributions

The sources of Cash necessary for the Reorganized Debtors to pay Allowed Claims that are to be paid in Cash by the Reorganized Debtors under the Plan will be:  (a) Cash on hand as of the Effective Date; and (b) any Cash generated or received by the Reorganized Debtors after the Effective Date from any source, including, without limitation, any recoveries from the

---

[3] Creditors and parties in interest are referred to the Amended and Restated RLSA, to be filed with the Plan Supplement, for complete terms of the treatment of the DZ Bank Secured Claim.

prosecution of all Causes of Action; provided, however, that expenditures of such Cash by the Reorganized Debtors shall be subject to the terms and conditions set forth in the Amended and Restated RLSA.

### 6.02.   Management After the Effective Date

From and after the Effective Date, the Reorganized Debtors shall be managed by the same management team in existence on the Petition Date as set forth in the Disclosure Statement.

### 6.03.   Directors of Reorganized Debtors

From and after the Effective Date, the initial directors and officers of the Reorganized Debtors shall be the persons identified in the Amended and Restated RLSA and Amended and Restated Transaction Documents, as set forth in the Plan Supplement.

### 6.04.   Corporate Action

On the Effective Date, all corporate actions contemplated by the Plan, including the election of directors and officers of the Reorganized Debtors, shall be deemed to have been authorized and approved in all respects (subject to the provisions of the Plan, the Amended and Restated RLSA and the Amended and Restated Transaction Documents).

### 6.05.   Amended and Restated RLSA and Transaction Documents

On the Effective Date, the Reorganized Debtors shall be authorized to enter into, and shall enter into the Amended and Restated RLSA and Amended and Restated Transaction Documents and execute all necessary and appropriate documentation in connection therewith.

### 6.06.   Effectuating Documents; Further Transactions; Timing

The Debtors and Reorganized Debtors are authorized to execute, deliver, file, or record such contracts, instruments, merger documents, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously, unless otherwise provided in the Plan.

### 6.07.   Servicing of Loan Portfolio Pursuant to the Amended and Restated RLSA

Pursuant to the terms and conditions of the Amended and Restated RLSA and Amended and Restated Transaction Documents, Reorganized PFC shall continue to operate as the servicer of Reorganized PFF's loan portfolio.

### 6.08.   Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors

On and after the Effective Date, after giving effect to each of the transactions contemplated under this Plan and the Confirmation Order, including but not limited to execution of the

Amended and Restated RLSA and Amended and Restated Transaction Documents, Reorganized PFF and Reorganized PFC shall continue to exist as separate entities in accordance with the applicable law in the jurisdiction in which they are organized and pursuant to their respective limited liability company agreements in effect prior to the Effective Date, except to the extent such documents are to be amended pursuant to the terms of the Plan, the Amended and Restated RLSA or the Amended and Restated Transaction Documents. Notwithstanding anything to the contrary in the Plan, Claims and Interests of each particular Debtor or Reorganized Debtor shall remain the obligations solely of such Debtor or Reorganized Debtor. Except as otherwise provided in the Plan, Amended and Restated RLSA or Amended and Restated Transaction Documents, on and after the Effective Date, all property of the Estates of the Debtors, including all Claims, rights and Causes of Action and any property acquired by the Debtors or Reorganized Debtors under or in connection with the Plan, Amended and Restated RLSA or Amended and Restated Transaction Documents shall vest in the appropriate Reorganized Debtor free and clear of all Claims, Liens, charges, remedies and other encumbrances.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS

### 7.01.   General Treatment of Executory Contracts: Rejected

The Plan constitutes and incorporates a motion by the Debtors under Bankruptcy Code sections 365 and 1123(b)(2) to (a) assume, as of the Effective Date, all Executory Contracts to which the Debtors are a party, which schedule shall be included in the Plan Supplement, except for any Executory Contract that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and (b) to reject all Executory Contracts identified in the Schedule of Rejected Contracts, if any, that will be included in the Plan Supplement.

The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date. Notice of the Confirmation Hearing shall constitute notice to any non-Debtor party to an Executory Contract that is to be assumed or rejected under the Plan of the Debtors' intent to assume or reject such Executory Contract and any related Cure Amount proposed by the Debtors.

### 7.02.   Cure Payments and Release of Liability

Except as otherwise provided in a Final Order, pursuant to Bankruptcy Code sections 365(a), (b), (c) and (f), all Cure Amounts that may require payment under Bankruptcy Code section 365(b)(1) under any Executory Contract that is assumed pursuant to a Final Order shall be paid by the Debtors within fifteen (15) Business Days after such order becomes a Final Order with respect to undisputed Cure Amounts or within fifteen (15) Business Days after a Disputed Cure Amount is Allowed by agreement of the parties or a Final Order. If a party to an assumed Executory Contract has not filed an appropriate pleading on or before the date of the Confirmation Hearing disputing the amount of any Cure Amount proposed by the Debtors, the cure of any other defaults, the promptness of the Cure Amount payments, or the provisions of adequate assurance of future performance, then such party shall be deemed to have waived its

right to dispute such matters.  Any party to an assumed Executory Contract that receives full payment of a Cure Amount shall waive the right to receive any payment on a Class 3 General Unsecured Claim that relates to or arises out of such assumed Executory Contract.

### 7.03.   Bar to Rejection Damages Claims

If the rejection of an Executory Contract pursuant to Section 7.01 of the Plan gives rise to a Claim by any non-Debtor party or parties to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, their Estates, or the agents, successors, or assigns of the foregoing, unless a proof of such Claim is filed with the Bankruptcy Court and served upon the applicable Reorganized Debtor on or before the Rejection Damages Claim Bar Date.  Any Holder of a Claim arising out of the rejection of an Executory Contract that fails to file a proof of such Claim on or before the Rejection Damages Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtors, each Reorganized Debtor, the Debtors' Estates or any of their Assets and properties.  Nothing contained herein shall extend the time for filing a proof of Rejection Damages Claim for rejection of any Executory Contract rejected before the Confirmation Date.

### 7.04.   Rejection Damages Claims

Any Rejection Damages Claim arising from the rejection of an Executory Contract shall be treated as a General Unsecured Claim pursuant to the Plan, except as limited by the provisions of Bankruptcy Code sections 502(b)(6) and 502(b)(7) and mitigation requirements under applicable law.  Nothing contained herein shall be deemed an admission by the Debtors that such rejection gives rise to or results in a Rejection Damages Claim or shall be deemed a waiver by the Debtors or any other party in interest of any objections to such Rejection Damages Claim if asserted.

## ARTICLE VIII
## CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION

### 8.01.   Conditions Precedent to Confirmation Date

The occurrence of the Confirmation Date of the Plan is subject to satisfaction or waiver by the Debtors (in consultation with the Lender Parties) of each of the following conditions:

(a)      The Bankruptcy Court shall have approved the Disclosure Statement;

(b)      The Confirmation Order shall be in form and substance acceptable to the Debtors and the Lender Parties; and

(c)      All provisions, terms and conditions of the Plan shall be approved in the Confirmation Order, unless waived by the Debtors (in consultation with the Lender Parties).

### 8.02.   Conditions Precedent to the Effective Date

Except for subparagraph 8.02(c) below which cannot be waived by either Debtor or Lender Parties without consent of each other, the occurrence of the Effective Date of the Plan is subject to the occurrence or waiver by the Debtors (in consultation with the Lender Parties) of the following conditions precedent:

      (a)    All of the conditions in Section 8.01 above shall have been satisfied or waived.

      (b)    The Confirmation Order (in form and substance acceptable to the Debtors and the Lender Parties) shall have become a Final Order.

      (c)    The Amended and Restated RLSA and Amended and Restated Transaction Documents shall have been executed and delivered by the parties thereto and all conditions precedent to the effectiveness of the Amended and Restated RLSA and Amended and Restated Transaction Documents shall have been satisfied or waived in accordance with the terms of such documents.

Except for 8.02(c) above, the foregoing conditions to the Effective Date may be waived, in whole or in part, by the Debtors (in consultation with the Lender Parties) without notice to any other parties in interest or the Bankruptcy Court, without any hearing or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Without limiting the foregoing, the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order so long as there is no stay in effect, if the Debtors and the Lender Parties so elect. The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation Order without the giving of any notice to any objecting party, if the Debtors so elect. In the event of any such appeal, the Debtors or any other party in interest may seek the dismissal of such appeal on any grounds. The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time. The Debtors will file with the Bankruptcy Court, and serve a copy on all parties in interest, a notice of the Effective Date within five (5) Business Days after its occurrence.

**8.03.    Consequences of Non-Occurrence of Effective Date**

If the Effective Date has not occurred within thirty (30) days of the Confirmation Date (as such date may be extended by the Debtors in consultation with the Lender Parties) , the Debtors reserve all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and/or that the Plan be null and void in all respects. If the Bankruptcy Court enters an order vacating the Confirmation Order, the time within which the Debtors may assume and assign, or reject, all Executory Contracts not previously assumed, assumed and assigned, or rejected shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated or as further extended by the Bankruptcy Court.

<u>**ARTICLE IX**</u>
**EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE**

**9.01.    Binding Effect**

From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Reorganized Debtors, all former, present and future Holders of Claims and Interests as of the Petition Date, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Cases.  Confirmation of the Plan binds each Holder of a Claim or an Interest to the terms and conditions of the Plan, whether or not such Holder has accepted the Plan.

### 9.02.    Vesting of Assets

Except as otherwise provided in this Plan, the Confirmation Order, the Amended and Restated RLSA and Amended and Restated Transaction Documents, all property and Assets of each Estate shall vest in the applicable Reorganized Debtor on the Effective Date free and clear of all Claims, Interests, Liens, encumbrances, charges and other interests.  Commencing on the Effective Date, each Reorganized Debtor may deal with the applicable Assets and its property and conduct its  business without any supervision by, or permission from, the Bankruptcy Court, and free of any restriction imposed on the Debtors by the Bankruptcy Code or by the Bankruptcy Court during the Bankruptcy Cases.

### 9.03.    Assertion of Causes of Action, Defenses and Counterclaims

From and after the Effective Date, to the extent not otherwise released pursuant to the terms of this Plan, each Reorganized Debtor shall have the exclusive right to prosecute, settle, or compromise any Cause of Action vested in or transferred to them under the Plan. Notwithstanding the extent to which any Cause of Action, or any defense, counterclaim, setoff or right related thereto is not transferable to the Reorganized Debtors under applicable non-bankruptcy law, to the extent permitted under the Bankruptcy Code, Reorganized PFF or Reorganized PFC, as the case may be, shall retain any such Cause of Action, defense, counterclaim, setoff or right, and shall be entitled to prosecute such Cause of Action, defense, counterclaim, setoff or right in its own name; provided, however, that Reorganized PFF and Reorganized PFC shall not retain any such Cause of Action, defense, counterclaim, setoff or right against any of the Releasees.  The Reorganized Debtors shall retain and may prosecute and enforce all other defenses, counterclaims, and rights that it has asserted or could assert against or with respect to all Claims asserted against such Debtors or property of their Estates.  No claim, right, Cause of Action, or other Asset shall be deemed waived or otherwise forfeited by virtue of a Debtor's failure to identify such property in the Schedules or the Disclosure Statement unless otherwise ordered by the Bankruptcy Court.

### 9.04.    Discharge Claims and Exculpation

(a)    Except as provided in the Bankruptcy Code, the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtors of any nature whatsoever, whether known or unknown, or against the Assets or properties of the Debtors that arose before the Effective Date.  Except as provided in the Bankruptcy Code, the Plan or the Confirmation Order, upon the Effective Date, entry of the Confirmation Order acts as a discharge and release under Bankruptcy Code section 1141(d)(1)(A) of all Claims against the Debtors and the Assets, arising at any time before the Effective Date, regardless of whether a Proof of Claim or Interest was filed, whether the Claim or Interest is Allowed, or whether the Holder of the Claim or

Interest votes to accept the Plan or is entitled to receive a Distribution under the Plan. Except as provided in the Plan or the Confirmation Order, upon the Effective Date, any Holder of a discharged Claim or Interest will be precluded from asserting against either Reorganized Debtor or any of their Assets any other or further Claim or Interest based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date. Except as provided in the Plan or the Confirmation Order, and subject to the occurrence of the Effective Date, the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtors to the extent allowed under Bankruptcy Code section 1141, and the Debtors and Reorganized Debtors will not be liable for any Claims or Interests and will only have the obligations as are specifically provided for in the Plan.

(b)    *Exculpation.* *Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, the Debtors, Reorganized Debtors, and all Creditors and parties in interest in the Bankruptcy Cases, along with their respective present or former employees, agents, officers, directors and principals (solely in their representative capacities), subsidiaries and affiliates shall be deemed to have released the Releasees from, and none of the Releasees shall have or incur any liability or obligation for, any Claim, cause of action or other assertion of liability, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise, to any Holder of a Claim or Interest or any other Person for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to or arising out of the Bankruptcy Cases, the operation of the Debtors' business during the Bankruptcy Cases, the formulation, negotiation, preparation, filing, dissemination, approval, or confirmation of the Plan, the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, the consummation or administration of the Plan, or the property to be liquidated and or distributed under the Plan, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction. The foregoing parties will be entitled to rely reasonably upon the advice of counsel in all respects regarding their duties and responsibilities under the Plan.*

*Each Person to which this Section applies shall be deemed to have granted the releases set forth in this Section notwithstanding that it may hereafter discover facts in addition to, or different from, those that it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Persons expressly waive any and all rights that they may have at common law or under any statute or other applicable law that would limit the effect of such releases to those claims or causes of action actually known or suspected to exist as of the Effective Date.*

### 9.05.    Injunction

*Except as otherwise provided in the Plan, the Confirmation Order shall provide that from and after the Effective Date, all Holders of Claims against and Interests in the Debtors are permanently enjoined from taking any of the following actions against the Debtors, each Reorganized Debtor, the Assets, or any of their property on account of any such Claim or Interest: (a) commencing or continuing in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any*

*judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or Lien; (d) asserting a setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors or Reorganized Debtors; and (e) commencing or continuing, in any manner or in any place, any action that does not conform to or comply with, or is inconsistent with, the provisions of the Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan, the Amended and Restated RLSA, RLSA Swap, Amended and Restated Transaction Documents or the Confirmation Order. If allowed by the Bankruptcy Court, any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.*

### 9.06.    Releases by Debtors and Estates

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors and Reorganized Debtors on its own behalf and as a representative of its respective Estate, and each of its respective directors and officers, agents, attorneys, accountants, financial advisors, subsidiaries and affiliates, each solely in their representative capacities, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Releasees of and from any and all Claims and Causes of Action (including, without limitation, Avoidance Actions), any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever, and any and all Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, the Reorganized Debtors, or their respective Assets, property and Estates, the Bankruptcy Cases or the Plan, the Disclosure Statement, the RLSA, the RLSA Swap, the Amended and Restated RLSA or the Amended and Restated Transaction Documents that may be asserted by or on behalf of any of the Debtors, the Reorganized Debtors or their respective Estates.

### 9.07.    Supplemental Release and Injunction

Notwithstanding anything to the contrary in this Plan or the Confirmation Order, each of the Debtors and Reorganized Debtors on its own behalf and as a representative of its respective Estate, and each of the Debtors' and Reorganized Debtors' respective directors and officers, agents, attorneys, accountants, financial advisors, subsidiaries and affiliates, each solely in their representative capacities, (a) shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally each and all of the Lender Parties, Lord Securities, Lyon Financial and U.S. Bank and their respective directors and officers, agents, employees, subsidiaries, affiliates, attorneys, accountants, financial advisors, representatives solely in their representative capacities of such applicable entities, of and from, as applicable, any and all Claims, any and all other obligations, suits, judgments, damages, debts, rights,

remedies, causes of action and liabilities of any nature whatsoever, and any and all Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or in part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date), and (b) are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and of all Interests or other rights of a Holder of an equity security or other ownership interest:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attacking (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) setting off, seeking reimbursement or contributions for, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Section 9.04 of this Plan; and (iv) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of this Plan and the Confirmation Order.

### 9.08.   Term of Bankruptcy Injunction or Stays

Unless otherwise provided herein or an order of the Bankruptcy Court (including without limitation the Confirmation Order), all injunctions or stays provided in the Bankruptcy Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Upon the Effective Date, the injunction provided in Section 9.05 of the Plan shall apply.

### ARTICLE X
### OBJECTIONS TO CLAIMS AND INTERESTS; DISTRIBUTIONS

### 10.01.  Objections to Claims and Interests

The Reorganized Debtors may file objections to Claims and Interests (other than Claims or Interests that have been previously Allowed or that are Allowed under the Plan).  The Reorganized Debtors (or their designees, successors and assigns) are not obligated to object to any Claim or Interest, but will nevertheless have standing to object to any such Claim or Interest from and after the Effective Date, if they so elect.

### 10.02.  Objection Deadline

Except as set forth in Sections 2.01(a) and 2.01(b) of the Plan with respect to Administrative Claims and Fee Claims, any objections to Claims and Interests must be filed no later than the Objection Deadline.  An objection to a Claim or Interest will be deemed properly served on the Holder thereof if service is effected by any of the following methods:  (a) in

accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or Interest or other representative identified on the Proof of Claim or Interest or any attachment thereto; (c) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of the Holder in the Bankruptcy Case; or (d) if no Proof of Claim or Interest has been filed, by first class mail, postage prepaid, on the Holder of such Claim or Interest at the address set forth in the Schedules.

### 10.03.  Settlement of Objections to Claims or Interests

From and after the Effective Date, the Reorganized Debtors are authorized to approve, with, in the case of any compromise in excess of $10,000 the approval of DZ Bank, which approval shall not be unreasonably withheld, compromises of all Claims or Interests, Disputed Claims or Interests, and Liens pursuant to Bankruptcy Rule 9019(b) and to execute necessary documents, including Lien releases (subject to the written consent of the party having such Lien) and stipulations of settlement, compromise or release, without further order of the Bankruptcy Court, but subject to the following notice provisions.  Either Reorganized Debtor, as applicable, shall give notice of any settlement and compromise of any Claim or Interest, Disputed Claim or Interest, or Lien that results in the allowance of any Claim, Interest or Lien in excess of $50,000 to any Person who received ECF notification or filed a notice of appearance in the Bankruptcy Cases.  If a dispute with respect to such settlement and compromise cannot be resolved within fourteen (14) days of the receipt of such notice, any party in interest shall have the right to file an objection and request a hearing before the Bankruptcy Court.

### 10.04.  <u>Omitted</u>

### 10.05.  Setoffs by the Debtors; No Waiver

The Reorganized Debtors may, but shall not be required to, set off against any Claim or Interest or any payment or Distribution to be made pursuant to the Plan in respect of such Claim or Interest, any Claim or Cause of Action of any nature whatsoever that the Debtors and/or the Reorganized Debtors may have to the fullest extent permitted under applicable law.  Any dispute related to the setoff rights of the Debtors or the Reorganized Debtors shall be determined by the Bankruptcy Court.  Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claims or Causes of Action that any of them may have against such Holder or any affiliate of such Holder.

### 10.06.  Procedures for Treating and Resolving Disputed and Contingent Claims

(a)  **No Distributions Pending Allowance.**  Notwithstanding any other provision of the Plan, the Reorganized Debtors shall make Distributions only to Holders of Allowed Claims.  No Holder of a Disputed Claim will receive any Distribution on account thereof until and to the extent that its Disputed Claim becomes an Allowed Claim.  To the extent a Claim or Interest is not a Disputed Claim or Interest but is held by a Holder that is or may be liable to a Debtors (in the first instance) on account of a Cause of Action, no payments or Distributions shall be made with respect to all or any portion of such Claim or Interest unless and

until such Cause of Action has been settled, withdrawn, or determined by a Final Order or such other court having jurisdiction over the matter.

The Reorganized Debtors, in their discretion, may withhold Distributions otherwise due hereunder to the Holder of a Disputed Claim or Interest until the Objection Deadline, to enable the Reorganized Debtors or any other party in interest to file a timely objection thereto.

(b)     **Claim Estimation.**  The Reorganized Debtors may request estimation or limitation of any Claim or Interest pursuant to Bankruptcy Code section 502(c) regardless of whether that Claim or Interest was previously objected to or whether the Bankruptcy Court has ruled on any such objection; *provided, however*, that the Bankruptcy Court will determine (i) whether such Claims or Interests are subject to estimation pursuant to Bankruptcy Code section 502(c) and (ii) the timing and procedures for such estimation proceedings, if any.  The Bankruptcy Court will retain jurisdiction to estimate any Claim or Interest at any time during litigation concerning any objection to any Claim or Interest, including, without limitation, during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any Claim or Interest, the amount so estimated shall constitute either the Allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim or Interest, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim or Interest.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims or Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Plan or the Bankruptcy Court.

(c)     **Distribution Reserve Accounts.**  On or after the Effective Date, the Reorganized Debtors may create one or more separate Distribution Reserve Accounts as is appropriate from the Assets to be distributed to or for the benefit of the Holders of Disputed Claims pending the allowance thereof, the amount of which will be adjusted from time to time as appropriate.  Each Distribution Reserve Account, if any, may be segregated by Class or, as applicable, by Administrative Claims and Priority Tax Claims.  A Holder of a Claim will not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve Account to pay such Claim unless permitted by a Final Order.  As stated above, nothing in the Plan will be deemed to entitle the Holder of a Disputed Claim to post-petition interest on such Claim, if Allowed, unless otherwise required under the Plan.

(d)     **Distributions After Allowance of Disputed Claim or Interest.** Distributions to each Holder of a Disputed Claim, to the extent it becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that govern Distributions to such Holders of Claims in the applicable Class.  Unless otherwise provided in the Plan, as promptly as practicable after the date on which a Disputed Claim or Interest becomes an Allowed Claim, and in any event not later than ten (10) Business Days after the Disputed Claim becomes an Allowed Claim, the applicable  Reorganized Debtor shall distribute to the Holder thereof from the applicable Distribution Reserve Account, if any, any Distribution that would have been made to such Holder had its Claim been an Allowed Claim on the date or dates that Distributions were previously made to Holders of Allowed Claims in the applicable Class, without interest (except as otherwise provided by the Plan) and net of any setoff and/or any required withholding of

applicable taxes.  After all Disputed Claims have been resolved by a Final Order or other final resolution, all remaining property in any relevant Distribution Reserve Account will revert to the appropriate Reorganized Debtor.

(e)    **Allowance of Claims Subject to Bankruptcy Code Section 502(d).** Allowance of Claims will in all respects be subject to the provisions of Bankruptcy Code section 502(d), except as provided by a Final Order or a settlement among the relevant parties.

### 10.07.  Distributions Under the Plan

(a)    **Means of Cash Payment.**  Cash payments made pursuant to the Plan will be in U.S. dollars and shall be made, at the option of and in the sole discretion of the Debtors and/or the Reorganized Debtors, by checks drawn on or wire transfers from a domestic bank.

(b)    **Delivery of Distributions.**  All Distributions to any Holder of an Allowed Claim shall be made at the address of each such Holder as set forth on the Proof of Claim filed by such Holder (or at the last address of such a Holder known to the Debtors if no Proof of Claim is filed or if the Debtors has been notified in writing of a change of address).  If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Debtors or Reorganized Debtors, as applicable, are notified in writing of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest, except as otherwise provided pursuant to this Plan.  Any Holder of an Allowed Claim whose Distribution is undeliverable must make demand for such Distribution to the relevant Debtors in writing on or before 120 days after the date such undeliverable Distribution was initially made, after which the Distribution shall be deposited into the applicable Distribution Reserve Account, if any, for distribution to other Holders of Allowed Claims, and any claim by such intended recipient with respect to such undeliverable Distribution shall be discharged and forever barred.  The Debtors and/or the Reorganized Debtors may employ or contract with other Persons to assist in or make the Distributions required under the Plan.  **The Debtors, Reorganized Debtors, and their agents and professionals are under no duty to take any action to either attempt to locate any Holder of a Claim or Interest, or obtain an executed Internal Revenue Service Form W-9 from any Holder of a Claim.**

(c)    **Fractional Dollars; De Minimis Distributions.**  Any other provision of the Plan notwithstanding, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  No payment of less than twenty-five dollars ($25.00) shall be made with respect to any Allowed Claim, and the applicable Reorganized Debtor shall retain any such payment.

(d)    **Unclaimed Property.**  Any Distributions that become Unclaimed Property shall be retained by the Reorganized Debtors, as applicable, free and clear of any claims or restrictions thereon, and any entitlement of any Holder of any Claim such Distributions shall be extinguished and forever barred.

**Withholding and Reporting Requirements.**  In accordance with Bankruptcy Code section 346

and in connection with the Plan and all Distributions thereunder, the Debtors and Reorganized Debtors shall, to the extent applicable, comply with all withholding and reporting requirements imposed by any U.S. federal, state or local taxing authority or any non-U.S. taxing authority. The Debtors and Reorganized Debtors shall be authorized to take any and all actions necessary and appropriate to comply with such requirements.  All Distributions under the Plan may be subject to withholding and reporting requirements.  As a condition for making any Distribution under the Plan, the Debtors and/or the Reorganized Debtors may require the Holder of an Allowed Claim to provide such Holder's taxpayer identification number and such other information, certification, or forms necessary to comply with applicable tax reporting and withholding laws.  Notwithstanding any other provision of the Plan, each Person receiving a Distribution under the Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations on account of any such Distribution.

### 10.08.  Duty to Disgorge Overpayments

To the extent the Holder of any Allowed Claim or Interest receives more than what such Holder is permitted to receive under the Plan, such Holder shall immediately return such excess payment(s) to the Reorganized Debtors, as applicable, failing which, the Reorganized Debtors may sue such Holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

## ARTICLE XI
## ACCEPTANCE OR REJECTION OF THE PLAN

### 11.01.  Impaired Classes Entitled to Vote

Class 2 is entitled to vote to accept or reject the Plan.

### 11.02.  Acceptance by an Impaired Class

A Class of Claims that is entitled to vote to accept or reject the Plan shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.   Any Ballot that is not properly completed and timely received by the Balloting Agent on or before the Balloting Deadline will not be counted.

## ARTICLE XII
## RETENTION OF JURISDICTION

### 12.01.  Jurisdiction

Until the Bankruptcy Cases are closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction as is legally permissible under applicable law, including under Bankruptcy Code sections 105(a) and 1142, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against and Interests in the Debtors and to enforce all Causes of Action and any related counterclaims, cross-claims, and/or third-party

claims over which the Bankruptcy Court otherwise has jurisdiction.  Nothing contained in the Plan will prevent the Debtors or the Reorganized Debtors from taking any action as may be necessary to enforce any Cause of Action that may exist on behalf of the either Debtor and that may not have been enforced or prosecuted by the applicable Debtor.

### 12.02.  Examination of Claims

Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim or Interest, except for the DZ Bank Secured Claim, and the reexamination of Claims and Interests that have been allowed for the purposes of voting, and the determination of any objections as may be filed to Claims and Interests.

### 12.03.  Determination of Disputes

The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine (a) all questions and disputes regarding title to the Assets, (b) disputes concerning the allowance of Claims and Interests, (c) all Causes of Action, controversies, disputes, or conflicts, whether or not subject to any pending action, as of the Confirmation Date, to recover assets pursuant to the provisions of the Bankruptcy Code, and (d) all disputes and controversies regarding the operation, implementation, and interpretation of the Plan, the Confirmation Order, and any agreements that are identified or implement the Plan or the Confirmation Order.

### 12.04.  Additional Purposes

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, occurrence of the Effective Date and/or substantial consummation of the Plan, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of or related to the Bankruptcy Cases and the Plan to the fullest extent permitted by applicable law, including but not limited to jurisdiction to:

(a)    hear and determine any modification of the Plan or the Plan Supplement pursuant to Bankruptcy Code section 1127, to cure any defect or omission or reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary or appropriate to carry out the purposes and effects thereof;

(b)    hear and determine disputes, issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the Plan Supplement and the transactions contemplated thereunder, the Confirmation Order, the Disclosure Statement, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

(c)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of or related to the Bankruptcy Cases or the Plan;

(d)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered or approved in the Bankruptcy Cases;

(e)     hear and determine all disputes involving the existence, nature, or scope of the discharge, injunctions, releases, exculpations, and indemnifications granted pursuant to the Plan or the Confirmation Order;

(f)     hear and determine disputes arising in connection with the execution, implementation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions, performance or payments provided for or contemplated in the Plan or the Confirmation Order, or any agreement, instrument or other document governing or relating to any of the foregoing; provided, however, that the Bankruptcy Court will not have exclusive jurisdiction with respect to any disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Amended and Restated RLSA, Amended and Restated LLC Agreement, RLSA Swap and other Amended and Restated Transaction Documents;

(g)     construe and apply any findings of fact and/or conclusions of law made in or in connection with the Confirmation Order;

(h)     adjudicate matters arising in the Bankruptcy Cases, including matters relating to the formulation and consummation of the Plan;

(i)     enter any orders, including injunctions, as are necessary to enforce title, rights, and powers of the Reorganized Debtors and the Debtors to impose any limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem necessary;

(j)     hear and determine all questions and disputes regarding title to or recovery of the Assets and property of the Debtors;

(k)     enter a Final Decree closing any or all of the Bankruptcy Cases;

(l)     correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Supplement, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, the Plan Supplement, and the Confirmation Order including the adjustment of the date(s) of performance under the Plan, the Plan Supplement, and any other documents related thereto if Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Supplement, and such other documents may be substantially realized thereby;

(m)     enter, implement or enforce such orders as may be appropriate if the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(n)     hear and determine all applications for compensation and reimbursement of expenses of Professionals or any other Person under the Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by

the Reorganized Debtors shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

(o)    hear and determine issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of the Plan;

(p)    hear and determine issues concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(q)    hear and determine all matters regarding the assumption or rejection of Executory Contracts, including any disputes concerning Rejection Claims or Cure Amounts;

(r)    hear and determine any objection to any Claim (including any Administrative Claim or Redemption Claim) or any Interest, including the allowance, classification, priority, secured status, compromise, estimation, subordination, or payment thereof;

(s)    allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim (including any Administrative Claim) or any Interest and to re-examine Claims or Interests that have been allowed for purposes of voting;

(t)    hear and determine any Cause of Action and any collection or settlement matters related thereto;

(u)    hear and determine any disputes or litigation regarding the validity, priority, or extent of any Lien and any Claim associated therewith; and

(v)    hear and to determine any other matter related hereto and not inconsistent with the Plan, the Confirmation Order, the Bankruptcy Code, or Title 28 of the United States Code.

### 12.05.  Failure of the Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Cases, including the matters set forth in Article XII of this Plan, the provisions of this Article XII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

### 13.01.  General Notices

Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served to the parties and addresses set forth below by certified

mail, return receipt requested, hand delivery, overnight delivery, first class mail, or fax transmission, and (c) deemed to have been given or made when actually delivered or received:

**–to the Debtors:**

S.A. Moskowitz
Petroleum & Franchise Capital, LLC
33 Mill Plain Road
Danbury, CT 06811

**–with a copy to counsel for the Debtors:**

Craig I. Lifland, Esq.
Zeisler & Zeisler, P.C.
558 Clinton Avenue
P.O. Box 3186
Bridgeport, CT 06605
Tel: 203-368-4234
Fax: 203-367-9678

### 13.02.  Plan Supplement

No later than five (5) days prior to the Confirmation Hearing, or no later than any other deadline specified in the Plan with respect to a specific agreement or document, the Debtors shall file with the Bankruptcy Court the Plan Supplement and such exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Upon the filing of the Plan Supplement, (a) the Debtors will serve copies of the Plan Supplement on the Office of the United States Trustee and parties that requested service pursuant to Rule 2002 of the Bankruptcy Rules and (b) the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Debtors' counsel.  The Plan Supplement is incorporated into, and is a part of, the Plan as if set forth in full herein, and all references to the Plan shall refer to the Plan together with all documents contained in the Plan Supplement.

### 13.03.  Exemption From Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest; or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance, filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment. The Confirmation Order shall direct all appropriate governmental officials or agents to forgo the collection of any such tax or assessment and to accept such documents delivered under the Plan without the imposition or payment of any charge, fee, governmental assessment, or tax.

### 13.04.  Asserting and Curing Default Under the Plan

Except as otherwise provided in the Plan, if either Reorganized Debtor defaults under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan, including but not limited to the Amended and Restated RLSA and Amended and Restated Transaction Documents, which documents may provide independent bases for relief concerning the assertion and cure of defaults), any Creditor or party in interest desiring to assert a default will provide the relevant Reorganized Debtor and its counsel with written notice of the alleged default.  The Reorganized Debtors will have thirty (30) days from receipt of such written notice to cure the alleged default.  If the default is not cured, any Creditor or party in interest may then file with the Bankruptcy Court, and serve on the applicable Reorganized Debtor and its counsel, a motion to compel compliance with the applicable provision of the Plan.  The Bankruptcy Court, on finding a material default, will issue orders compelling compliance with the pertinent provisions of the Plan.

### 13.05.  Compliance with Tax Requirements

In connection with the Plan, the Reorganized Debtors will comply with any withholding and reporting requirements imposed by federal, state, and local taxing authorities, and Distributions will be subject to the withholding and reporting requirements.

### 13.06.  Revocation or Withdrawal of the Plan

The Debtors (with the approval of DZ Bank, which approval shall not be unreasonably withheld) reserve the right to revoke and/or withdraw the Plan at any time before the Confirmation Date.  If the Debtors revoke or withdraw this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors or any other Person.

### 13.07.  Modification of the Plan

Subject to section 1127 of the Bankruptcy Code, the Debtors (with DZ Bank's approval, which approval shall not be unreasonably withheld) reserve the right to modify the Plan and Plan Supplement in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and (b) the Debtors shall have complied with Bankruptcy Code section 1125.  The Debtors further reserve the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, (b) the Debtors shall have complied with Bankruptcy Code section 1125, and (c) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Bankruptcy Code section 1129.

### 13.08.  Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 13.09.  Implementation

Each of the Debtors and the Reorganized Debtors is authorized to and may execute such documents, take such other actions, and perform all acts that may be necessary or appropriate to implement the terms and conditions of the Plan without the need for further Bankruptcy Court approval.

### 13.10.  Bankruptcy Restrictions

From and after the Effective Date, the Reorganized Debtors shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code (e.g., sections 363 or 364) except as the Bankruptcy Code may specifically provide otherwise.  No monthly operating reports will be filed after the Effective Date; however, the Reorganized Debtor or the Debtors shall provide the U.S. Trustee such financial reports as may be required by law.

### 13.11.  Ratification

The Confirmation Order will ratify all transactions effected by the Debtors during the pendency of the Bankruptcy Cases, including, but not limited to, the Debtors' entry into the RLSA Swap.

### 13.12.  Integration Clause

This Plan is a complete, whole, and integrated statement of the binding agreement among the Debtors, the Holders of Claims and Interests, and other parties in interest upon the matters herein.

### 13.13.  Interpretation

Unless otherwise specified, all Section, Article and exhibit references in the Plan are to the respective Section in, Article of or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The headings of the Articles, paragraphs, and Sections of the Plan and table of contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation.  Nothing herein shall be deemed as a judicial admission by the Debtors.  Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

### 13.14.  Severability of Plan Provisions

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable before the Confirmation Date, the Bankruptcy Court, at the request of the Debtors or the Reorganized Debtors (in either instance after consultation with DZ Bank), will have the power to alter or interpret the Plan to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.15.  Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law of the United States is applicable to the Plan in the Bankruptcy Cases, or to the extent that an Exhibit to the Plan or Plan Supplement or any relevant document, including but not limited to the Amended and Restated RLSA and Amended and Restated RLSA Transaction Documents, provides otherwise, the rights and obligations arising under the Plan in the Bankruptcy Cases shall be governed by, and construed and enforced in accordance with, (a) the laws of the State of Connecticut , and (b) the laws of the state of incorporation, formation, or organization of a Debtors shall govern corporate or other governance matters with respect to such Debtors, in either case without giving effect to the principles of conflicts of law thereto.

PETROLEUM & FRANCHISE CAPITAL, LLC

By:   **/s/Stanley A. Moskowitz**
Stanley A. Moskowitz, President and CEO
Its Authorized Representative

PETROLEUM & FRANCHISE FUNDING, LLC

By:   **/s/Stanley A. Moskowitz**
Stanley A. Moskowitz, President and CEO
Its Authorized Representative

# EXHIBIT A

### Summary of Certain Material Terms of the Amended and Restated RLSA and Lender Party Plan Treatment[4]

| | |
|---|---|
| **Closing Date** | The Effective Date of the Plan. |
| **Maturity Date** | The maturity date of the Amended and Restated RLSA shall be ten years from the Closing Date. |
| **Loan Amount** | Existing Revolving Loans and other "Obligations" under and as defined in the RLSA, including principal in the amount of $53,995,665.00 and certain other amounts (as described below) that are due and owing and not paid to DZ Bank in Cash on the Closing Date shall be converted to a term loan (the "Loan") under the Amended and Restated RLSA. |
| **Lender Margin** | 1.75% p.a. |
| **Interest Rate Hedge** | A fixed-to-floating swap where the Borrower pays a fixed rate of 1.25% p.a. and the swap counterparty pays one-month LIBOR. |
| **Cash at Closing** | Cash in the Collection Account will be allocated on the Closing Date in the following amounts and in the following order of priority: |

    a.  All accrued and unpaid portions of the Lender Margin and Yield (as determined pursuant to the RLSA in effect on the Petition Date) prior to the Closing Date (including prior to the Petition Date);[5]

    b.  Out-of-pocket fees, costs and expenses incurred by PFC/PFF related to the Bankruptcy Cases, including the preparation, negotiation, execution and delivery of the Amended and Restated RLSA and Amended and Restated RLSA Transaction Documents (including legal fees, expert advisors, etc.); provided that the aggregate payments to PFC/PFF under this clause b. shall not exceed $500,000, less any amounts already

---

[4] This illustrative summary is subject to, and shall be governed by, the final terms and conditions of the Amended and Restated RLSA, a substantially final form of which shall be filed with the Plan Supplement. Capitalized terms used herein shall have the meaning given to such terms under the Plan or the Amended and Restated RLSA, as applicable.

[5] DZ Bank agrees (i) to cap the Lender Margin at 2.50% p.a. for any period prior to the Closing Date and (ii) not to charge any Default Funding Rate that might otherwise be applicable as part of the Yield Rate for any period prior to the Closing Date.

paid during the pendency of the Bankruptcy Cases (and not including a $100,000 retainer paid to Zeisler & Zeisler prior to the Petition Date);

c.  Out-of-pocket fees, costs and expenses incurred by DZ Bank related to the Bankruptcy Cases, including the preparation, negotiation, execution and delivery of the Amended and Restated RLSA and Amended and Restated RLSA Transaction Documents (including legal fees, expert advisors, etc.); provided, however, that the aggregate payments to DZ Bank under this clause c. shall not exceed $2,700,000, less any amounts already paid during the pendency of the Bankruptcy Cases;

d.  Reasonable legal fees and expenses incurred in conjunction with the delivery of certain legal opinion letters required in connection with the Amended and Restated RLSA;

e.  Reserve Account (in the amount and as described below);

f.  PFC Operating Account Disbursement (in the amount and as described below);

g.  Amounts needed to pay Allowed General Unsecured Claims due and owing or reserved as of the Effective Date pursuant to the terms and conditions of the Plan; and

h.  Principal payment to DZ Bank to repay amounts outstanding under the Existing Agreement.

In case disbursements a. through g. exceed the available amount of Cash in the Collection Account as of the Closing Date, such shortfall shall be paid to the applicable parties by the Lender Parties, capitalized and added to the Loan balance pursuant to the terms of the Amended and Restated RLSA.

| | |
|---|---|
| **Servicing** | PFC shall be the Servicer under the Amended and Restated RLSA; U.S. Bank shall perform role as backup servicer (duties to explicitly include confirming monthly balances, amortization, and settlement procedures). |
| **Servicing Fee** | For each Remittance Period, 0.65% per annum multiplied by the Eligible Receivables Balance as of the first day of such Remittance Period. |
| **Reserve Account** | $1,000,000, to be funded on the Closing Date and held in a blocked bank account in the name of PFF and pledged to DZ Bank (use of funds will be restricted to servicing related expenses – including any post-default servicing related expenses, or at PFF's option payment of principal and interest to DZ Bank and payments required to maintain Overall Hedge Position, if necessary; provided that if an Event of Default has occurred and the Advance |

Rate is 100% or higher, DZ Bank may apply such funds to the Obligations owing by PFF under the Amended and Restated RLSA.  The balance in the Reserve Account (net of any pre-allocated expenses, as reasonably determined by the Servicer) shall be subtracted from the Outstanding Amount of the Loan for the purposes of determining the Advance Rate (including on the Closing Date).

**PFC Operating Account Disbursement**

$500,000, plus certain holdback officer compensation amounts and the final PFC payroll for the pay period paid to, or including, the Effective Date, to be disbursed from the Collection Account to PFC on the Closing Date to fund ordinary course operations.

**Bankruptcy Event**

Any Pre Effective Date Servicer Default and Event of Default as a result of the filing or prosecution of the Bankruptcy Cases shall be waived.

**Borrowings**

Sections 2.01 and 2.02 of the Amended and Restated RLSA shall be amended to reflect the fact that the Lender shall not be obligated to make any additional Loans on or after the Closing Date.

**PFF LLC Agreement**

The Amended and Restated LLC Agreement shall be revised to incorporate independent director language (including two individual independent directors) that is acceptable to DZ Bank and the Debtors.

58029v.6